All right. Next up, we have the case of Joseph v. Hillsborough County Sheriff. We'll hear first from Mr. Anulowicz, and I apologize if I've gotten that wrong. I'm sorry? Anulowicz, yes, Your Honor. Anulowicz, thank you. Thank you. Defendant Mark Clark unlawfully seized Andrew Joseph III on the midway of the state fair in 2014. Andrew was then ejected from the fair to a dangerous location, and as he was trying to get back to safety, he was struck and killed by a car. The jury rendered a verdict in favor of Defendant Mark Clark in saying he did not violate Andrew Joseph III's Fourth Amendment right to be free from an unreasonable search and seizure. The trial judge we contend erred in not granting plaintiffs motion for judgment as a matter of law and also erred in not granting, alternatively, their motion for a new trial. Because the record evidence presented at trial supports a finding that Clark violated Andrew's Fourth Amendment rights and that there's no other evidence in the trial court record, the judgment should have been entered in plaintiff's favor on that claim. A prior panel of the... I'm sorry. It seems like, and correct me if I'm wrong, you're really raising two sort of concerns. One, your argument is that the jury couldn't have found on this record that Mr. Joseph was running. And two, that even if it found that he was running, they couldn't have found that he was being disordered. Are those really the two sort of underlying matters that you are addressing? Not exactly, Your Honor. So if I can... Yes, please. There is the issue about running, and we assume that there is evidence in the record that he was running. That's fine. But what you're saying is that there's no other evidence in the record that he was doing anything that would cause his arrest. And let me go through this. Now, a prior panel of this court found that based upon essentially the same record that was presented at trial, said Andrew was not in any conceivable way committing a crime or even breaking a fair rule at the time that he was detained. Now, the defendant relies on four things in saying that Andrew's detention was reasonable. The first one, and this is going to get to your question about running and other issues. The first one is an ejectment form that was filled out by an officer Eshenique. Officer Eshenique filled out the ejectment form based upon what Mark Clark told him about why he seized Andrew. And in the ejectment form, it simply says that Andrew was running through the midway, causing disorderly conduct. Okay, so those are the only two statements that are in there. First of all, with regard to running, to get to your first question, Judge Rosenbaum, running is not a crime and it is not even a violation of fair rules. Every single officer, including defendant Clark, that testified during trial said that running in and of itself would not warrant a detention or arrest or custody of anybody at the fair. So running is off. Okay. So then the next thing that the ejectment form says is that Andrew was on the midway causing disorderly conduct. Well, this court has repeatedly held in Gammon, Luke, Sorrells, Kelly, Wallace, and other cases that a simple conclusion of law is not enough to support a probable cause analysis. You have to say, what are the facts that support causing disorderly conduct? And there are no facts. We know that running can't be it. There are nothing else in the record showing that Andrew was pushing, shoving, doing anything else other than running, which Clark says is not disorderly conduct. So that's out. So the ejectment form doesn't support it. I'm sorry to interrupt, but I thought there was, I mean, I think maybe this is a very close issue, but I thought there was some evidence in the crowd that running could become disorderly conduct. I don't believe that the record supports that. I believe that what the record says is that there were other people in the crowds that were bumping, shoving, causing problems at the fair. Okay. And that those other people who were that, that could have led to their detention. But what this court has said in this case, and has also said in the Swint versus Sidney of Wadley case, is that just because other people are doing something wrong in the proximity where you are, does it mean that you get to be caught up in that group or that probable cause exists to get you? If I was running to the back- That's true, but wasn't Mr. Joseph's friend, there's not really much controversy that Mr. Joseph's friend was allegedly engaged in disorderly conduct, right? You're talking about Corey Thornton? Yes. I don't, I don't, I think that the allegation of officer Bell is that Corey Thornton was running. I don't think that there's an allegation that Corey Thornton was doing something else, the 12 year old that was taken into custody. And when you look at the other evidence, you have Ms. Perino who says, I saw Andrew Joseph running. That's not enough. You have other people say, I saw Corey Thornton running. That's not enough. And if that's enough, then anybody running to go to the bathroom, doing whatever else that they might be doing could get picked up. Why Andrew Joseph was picked up, Corey Thornton is the only person that testified as to the facts as to what happened exactly when he was picked up and he was walking, bending over to pick up and give a friend a hat. That's it. And there is nothing else in the record. There's simply wild speculation as to what else could have occurred. And if based upon what the state is presenting here, anybody could be picked up for any reason because they were in an environment where some kids were running and shoving, some kids were maybe walking, some kids were picking up a hat, some kids were maybe just running. But there, the record is completely devoid of any facts that would support a jury verdict. Let's say that Andrew was prosecuted on this. There's zero evidence to support that. How many students were out there that night? A tremendous number of students. How many? I would think, I don't know the answer for sure. Would you say it was a huge crowd? It was a huge crowd, yes. All right. And how many were within proximity of Thornton and Joseph? I don't think. Do we know? We don't. All we know is it was a big crowd. All we know is that it was a big crowd. And they were having problems with crowd control, as it were. They were having problems with crowd control. Basically, this is a crowd control case, basically, in a way. I mean, I don't think it's a crowd control case. I think that the officers, if you look at who they were picking up. What I'm saying is, let's assume you had 100 people. Yes. Close around. There's no way in the world an officer can spot one or two people and make independent probable cause determinations. They're just going to get, if they're causing a disturbance, generally, they're going to move them somewhere. Are they not? That's not what they did. They didn't arrest. I respectfully disagree, Your Honor. They can move them somewhere. But if I'm a reporter and I'm covering a mob scene, and an officer comes and arrests me because I'm covering the mob scene. No, no, no. That's a different story. Let's assume the officer's taking everybody. Right, but the officer didn't take everybody. The officer only took random kids who they picked up and put into custody, and then he wrote down the reasons why. If Andrew was doing enough to be detained, he would have written down the reasons why. The prior panel of this court, Your Honor, you were on that, said explicitly that based on this same evidence, Andrew wasn't doing anything conceivably wrong. This 14-year-old young man was taken and put into custody because the officer simply saw him, or did, or believed that he was part of a bigger crowd. That's a problem, and that's something that this court has repeatedly held, is not sufficient to warrant probable cause to put somebody in custody, and that is the question before the court. Kristen, here is an issue that I think you need to address, and that is this. When we previously issued our opinion, we were talking about a summary judgment standard, and we were ruling based on the evidence viewed in the light most favorable to the non-moving party. But here, now there's new testimony from the trial that did not previously exist, and so Bell testified as to how running in groups on a crowded Midway could disrupt the order of the fair, and said he stopped Thornton from running because technically running is a disorderly, a breach of the peace, where it affects other innocent patrons on the Midway. And Clark agreed that running could be disorderly conduct under certain circumstances, and your expert in Florida police, or not your expert, the defendant's expert in Florida police training and practices, testified that individuals running at night on a crowded Midway towards officers engaged with others would absolutely be disorderly under the circumstances under Florida law. And so what we're talking about here is whether there was arguable probable cause, and why isn't that enough evidence in the record, even if we don't agree that ultimately, you know, he was acting in a disorderly way, why isn't that enough evidence on the record for, you know, for a jury to conclude that he was, or that at least Clark believed he was, he was acting in a disorderly way. Okay, and I think there's, if I'm over my time, so may I go ahead and answer? Yes, of course. Thank you. So two, two, two, two reasons, your honor. Number one, that this court has repeatedly held, the United States Supreme Court has repeatedly held that subjective, that subjective opinions of an officer, this is an objective reasonableness standard, that their subjective opinion to go ahead and pick somebody up and detain them is not enough. The second thing we know is the only evidence that we've got as to what officer Clark thought is that he was running on the Midway. He didn't say he was running on the Midway and shoving people. He didn't say he was running on the Midway in a group, in a large crowd. He doesn't say anything other than running. And we know that running alone is not sufficient to support probable cause. So the testimony at trial would have had to be running plus something else. And that is not established in the trial. Nobody saw Corey Thornton doing that. Nobody established it. It is a wild and speculative guess in this record to say that he did. And I kind of go back to my original point, which is if Corey Thornton was put in front of a jury on this case, he couldn't get convicted. And if Corey Thornton was put in front of a judge and you said, judge, this person was running. I need a warrant for them because they were running. That's not, that's not arguable probable cause. Question isn't whether or not Corey Thornton could be convicted. The question is whether there was arguable probable cause, which is different. And that's what I was getting to your honor. Yeah, I think I understand. It's not because if I went to a judge and said he was running, that's not arguable probable cause to issue a warrant. If he was running and doing something else, then maybe so. But that's not what's in the record here. All right. Thank you very much. And you deserve five minutes. Ms. Borland, we're going to hear from you next, but I note that you're the cross appellant. You have not divided your time. Did you wish to do so given that you're the cross appellant? We can't hear you. You're on mute. Yes, your honor. I actually asked to do that when we had done the zoom session was told that I couldn't do that. But if I could, I would like to reserve three minutes for rebuttal. Yes. Okay. So Marie Borland from Hillworm. Right now. Okay. Thank you, your honor. Marie Borland from Hillward in Henderson and Tampa on behalf of Corporal Mark Clark on the plaintiff's appeal and also the Hillsborough County Sheriff's Office on the cross appeal. So let me interrupt you for just a second. Mr. Robinson, would you please reset the clock to 12 minutes and we'll start over with Ms. Borland. Go ahead. So your honor, I want to put this in the proper context. And again, there are some very heavy standards that the plaintiff would have had to have satisfied for a rule 50 motion, which he just simply failed to satisfy. And under rule 50, the very high bar is that there is no legally sufficient evidentiary basis to support the jury's verdict. The court can't weigh, make credibility determinations, weigh the evidence. All reasonable inferences have to be construed in favor of the non-movement. There's also what counsel didn't mention was not only did he have to establish, well, he didn't have to establish arguable probable cause. He had to establish an absence of probable cause. And unlike rule 50 probable cause has a very low bar. And counsel mentioned something about, you know, the subjective intent is critical. And in fact, the courts have said the subjective intent of the detaining officer is irrelevant. It's an objective standard. So I do have a question. So let's say it sounds like there was a melee. There's a lot of people. You had a lot of young people there, but also adults, everyone is running. And so the only reason why in this case, Andrew was stopped is because he also was running. So when it comes to probable cause in the situation where arguably there was probable cause to stop everyone, is there any extra analysis that is required to justify why out of everyone who could have been stopped simply for running, Andrew is the one and his friend Corey were the ones that were stopped? Well, your honor, the reason we're talking about Andrew is because Andrew is on the plaintiff has brought this action on Andrew's behalf. So we don't have in the record about any of the other youth that would have been stopped. I mean, our inquiry in the courts inquiry. Well, no, the justification in part was because there were large crowds running through the midway causing disorderly conduct. And I think that's mentioned a couple of times that the whole context was that there were a lot of people running and engaging in disorderly conduct. I understand in terms of the probable cause argument that the Joseph family has raised. It's perhaps arguing that he was not engaged in that. But again, assuming that there were a lot of people engaged in that, what extra analysis if any is required to justify why Andrew out of everyone was the one who was stopped? And then as we know, the outcome for him, unfortunately. Well, your honor, and again, I would say we're here. The test for this court on this issue on this appeal is the rule 50 standard. And that is was there a reasonable evidentiary basis for the jury to have found that Corporal Clark did not act without probable cause in detaining Andrew. So again, I don't I don't understand really how I could address who was or wasn't stopped, but the evidence. So what the court really should be looking at and has to look at is was Judge Scriven correct in saying there was a reasonable evidentiary basis for the jury to conclude that Corporal Clark did not act without probable cause as it relates to Andrew. We know that Andrew wasn't the only individual who was who was removed from the midway. We think there were I think there were 100 other youth that were removed. But the question is what what evidentiary basis existed for Corporal Clark to have acted as he did. And that's what Judge Scriven was tasked with with reviewing. And that's what this court is tasked with reviewing in connection with whether she erred on her rule 50 motion. Now, there was a lot there was a lot of evidence that supported her determination in her order denying the rule 50 motion. The ejection form. It was proof that Andrew was running on the midway, causing disorderly conduct. Judge, I mean, I'm sorry, Deputy Econice said this is what Clark told me to write. So there was a reasonable inference that at the time Clark, that's what Clark saw in the midway. He saw Andrew running. There was Jordan Perino who testified unambiguously multiple times that Andrew was running and in pursuit of his friends who were being detained by law enforcement officers. Sergeant Bell, who says who testified that he detained Corey Thornton, said Corey Thornton was running in a crowd of 30 to 40 individuals. Corey Thornton testified that Andrew was with him at all times. So Judge Scriven correctly determined that that supported a reasonable inference that Andrew also was running, corroborated by Jordan Perino's testimony and corroborated by the ejection form. And what about your friend across the aisles argument that running alone is not enough, even if we assume he was running, that that's just not enough on this record to show that he was disorderly and that there's no individualized evidence to show that Mr. Joseph himself was acting in a disorderly way. Well, Your Honor, and I was about to get to that fourth item of evidence, and Your Honor mentioned this as well, that there was ample and there was abundant testimony from multiple witnesses that running on the Midway on student night of February 7 of 2014 was disorderly conduct. So again, the question is, was there no reasonable evidentiary basis for a jury to have to have concluded the way it did on the probable cause on the Section 1983 claim? That is the test. So the court has to consider, just like Judge Scriven, the court has to consider that evidence in favor of Corporal Clark and in favor of the probable cause analysis. And I understand that. My question again, and perhaps it is a moot point, if all that matters is running is disorderly conduct, Andrew was running, and therefore there was probable cause for his detention. And perhaps if that's what you're arguing, that it's that simple, perhaps that is the case. My question again, and you seem to support also the evidence that shows there were a lot of people who were running. And we're assuming that every single person who was running was engaged in disorderly conduct. Is there no additional analysis to determine why Andrew out of everyone was stopped as opposed to the many other people? I mean, is that still enough? Your Honor, it is enough on this record because it was not part of the trial. It was not brief. There was nothing that there was no evidence that somehow Andrew was singled out among a lot of different students who are at the fair that night. Again, there is evidence that there were 100 kids who were ejected that night or arrested. And anyway, none of them were injured. But anyway, Andrew was not singled out. That's not part of this case. It's never been brief. And Your Honor, I would say it's not part of the analysis. And the analysis on the plaintiff's appeal is very clear. It's a Rule 50 analysis. Did Judge Scriven error when she said she could not determine as a matter of law that there was no way that a reasonable jury could not have found that plaintiff failed to prove his meet his burden of proving an absence of probable cause? So the Rule 50 standards is extraordinarily high. The probable cause bar is very low. And there was ample evidence. And I don't really I can't imagine a way this court could say that under these circumstances and on this record, the judge Scriven erred as a matter of law when she denied this Rule 50 motion. I mean, the jury heard the evidence. The jury spoke. Miss Marlin, what does the record tell us about how many people were out there that night? Your Honor, I don't think that they there's some evidence that some people had tickets. Well, let me just say this. I mean, I don't believe it. Just as Mr. Anula said, I don't believe it's in the record. How many how many youth were there? I think there were hundreds and hundreds. If there were two or whether is there testimony that there were hundreds and hundreds? Well, I don't know that somebody did any witness express described the crowd. I'll put it that way. It was it was described as chaotic, crowded, shoulder to shoulder. It was so it was so crowded that they needed 200 law enforcement officers to be there to keep the peace. So your argument is that is that law enforcement doesn't have to, in retrospect, go back into the crowd and say, I picked him out because. Well, as opposed as opposed to being in the in the group that was detained, basically. Well, again, it's an article. How many were detained altogether? 20 or 30 on the evening of about the time they were. Taken to the your honor, it's not it's not in the record. And I guess the reason I'm confused by a little bit confused by the question is we're here on the case of Andrew Joseph and we're here on the case of I understand that I'm throwing you a softball. Well, your honor, the softball is, is that they were taking it was crowd control exercise that they were engaged in your honor. They weren't they weren't they weren't in particular looking for criminals or anybody. They're trying to try to control a crowd. Of course, your honor. They were there to keep the peace. They were so they collect the crowd. Correct. They and he's in the crowd. He was one of many. He was one of at least 100 youth who were either ejected or arrested that evening. Sergeant Bell said there were 20 or 30 or 40 youth running with Andrew and Corey at the time they were detained. So, no, of course, Andrew was not singled out. No, of course, there was chaos. And I wouldn't find any witnesses who can testify precisely what he was doing the whole time. It doesn't matter other than himself and he's not here. And nobody, nobody else would know that, would they? Well, what matters is what was he doing when he was seized on the midway and we know he was running based on the evidence, which has to be construed in Corporal Clark's favor. So, OK, well, your other argument is and I guess the reason why you file this cross appeal is challenging the district court's interpretation that once the police did detain him, whether it was based on probable cause or not, they had he was in their custody and control or at least detained under their watch. And so can you unpack a little bit more your argument as to why we have a statute in Florida that seems to be clear as to what law enforcement is supposed to do once they have detained a minor, as opposed to what happened here, which is that the minor's parents or guardian were never contacted? Yes. And, Your Honor, I see that I'm down to about a minute and I haven't even gotten to my argument on main appeal. So may I go ahead and just take all of my time? First, go ahead. OK, so on the sheriff's appeal on the wrongful death claim, we basically raised two issue and your honor has identified one of them, that there were two very prejudicial and erroneous rulings. And one was the instruction to the jury, not only that there was a duty under these criminal notification release statutes, but also that the sheriff sheriff's deputies violated the duty and that the duty may or I'm sorry, the violations may be considered as evidence of negligence. And, Your Honor, we have two arguments on the erroneous jury instruction and its prejudicial effect. One is the plain language. And I don't have time to go through the statutes. I ask the court to please consider them carefully. They are in a chapter 985. It talks about custody and intake. The criminal notification talks about the four circumstances where notification is required. None of those existed in this case. The release statute also contemplates a juvenile that has been taken into the custody of the criminal justice system. That didn't happen here. So on the plain language of the statutes, I think the court can find or make a determination that they just simply don't apply to these circumstances, making the jury instruction erroneous. And the reason that is so prejudicial is Andrew was killed two hours after his detention ended. So the plaintiff it was important for the plaintiff to close that two hour gap with proximate cause. And this was one of this was probably the only item of evidence that the jury could have relied on that once Judge Scriven told the jury, well, the sheriff had a duty to call Andrew's parents and release him to the custody. And guess what? The sheriff violated that duty. And you can consider that. Well, the jury was invited to make a determination that there was negligence because the obvious conclusion is had the parents been called and had Andrew been released to their custody, he would be alive. So this was an erroneous ruling on the plain face of the statute. No court in Florida has ever construed the statutes to apply to a circumstance other than the circumstance listed in the statute. For that reason, if the court isn't compelled, why doesn't why doesn't the third circumstance apply here? That is for a delinquent act or violation of law pursuant to Florida law, pretending to a lawful arrest. Why doesn't that apply? Well, we would say because there was no lawful arrest here. It seems to me when you read the statute in context, it's talking about for a delinquent act or a violation of law that Florida makes it possible to make a lawful arrest for not that there has to actually be an arrest. And in fact, if we if there were if there had to be an arrest, then it would make no sense why the statute talks about taking into custody instead of an arrest. Well, I think you take into custody and if the same pursuant to Florida law pertinent to a lawful arrest, it would be for arrest. But I would say, Your Honor, that the fact that Your Honor is saying this is all the more reason why if the court is not can't make a definitive determination based on the language of the statute, then this matter should be. So here we can't make a definitive determination. I mean, does your does your argument rely on. Let me put it this way. If if we were to conclude and again, we haven't talked about any of this. This is a hypothetical. But if we were to conclude that the third circumstance applied here. Is there some kind of an error that you would continue to argue? I would continue to argue error, because if you look at Chapter 985 and it says custody and intake, I mean, it plainly is referring to a juvenile who is taken into the custody of the juvenile justice system. And I would say, Your Honor, if it were to apply in a circumstance like this, some court would have said this at this point. I mean, the statutes have been on the books for some time. No court in Florida has ever construed these statutes to create a private cause of action and negligence against law enforcement. That is a very dangerous proposition. That is wrong as a matter of public policy. I don't think it's I don't think that's I don't think that's an accurate characterization of what the district court did here. It did not make a cause of negligence into a it did not make a finding of negligence into a cause of action. What it said is, if you find that there was negligence, it can be used as evidence when you consider whether there was a violation. And it's based on the duty that is offered in the statute. So they're not saying they're not saying that the mere violation of the statute is necessarily a finding of negligence. They're saying if there's a violation of the statute that can be used as evidence when you're considering whether negligence occurs. Well, Your Honor, but that's not what happened here. Judge Scriven didn't just say there was a duty. You know, I instruct you that there was a duty under the statute, she said. And I also instruct you that the sheriff breached that duty. So therefore, by a violation of the statute, and then you can consider that once she told the jury that the sheriff's office violated the statute for failing to notify and release, what was the jury to do? They had to rule in favor of the plaintiff on that cause of action because had he been released to his parents, he would have been alive. It was very prejudicial. And I haven't been able to argue the next part, the prejudicial part that Judge Scriven allowed, said she had not yet made a determination on the statute, allowed the sheriff to put an entire case from multiple law enforcement officers saying precisely why that statute doesn't apply in these circumstances and never has been. And then she turned around and instructed the jury that, well, yes, it does. They're wrong. And by the way, the sheriff violated this. And then plaintiff's counsel closing argument called our witnesses liars. So argument. I appreciate it. We've let you go over a bit. We're going to hear back from Mr. Onalewicz with his remaining rebuttal time. Your Honor, just to briefly address some of the questions that are relate to the probable cause analysis. I mean, first of all, obviously, the Fourth Amendment is an individual, not a collective right. And this court is clearly defined in the Supreme Court has defined the parameters of that right. Our argument is that when you look at the record, there is no record evidence that Andrew Jones was doing anything. There is no probable cause or arguable probable cause in the record to support this and that everything that the that's in the record would require a logical leap that is just way too broad to get to Judge Joe Flatt's question. Judge Joe Flatt, they did not round up everybody that was in the crowd. There is record evidence. And I can cite it to the court later. I don't have it right now. But there is record evidence of who was who was taken up. There are the individual ejection forms. And I think like four or five people were were grabbed up at that time. So he did make an individualized determination of who to pick up. My concern is this. Let's let's let's assume there are 20, 30 students or whatever young people gathered and they think it's a disturbance. And they and they relocate them somewhere else. They're taking them away from where they are and they're moving them. And in theory, that's an arrest, I suppose. But that's part of this crowd control, as it were. So if crowd control and moving people is is an arrest, I want to see the case. Sure. And I think it's the statute, Your Honor. And so he was actually taken into custody, processed and spent, I think, I know. I know. I know what they took it. But I'm talking about when bringing them to the place where they talk to them.  Yeah. He was. And I think it's yeah. When they brought them to that place, were they under arrest? I think so. He was certainly. They were all under custody. If there were 20, everybody that they wanted were under arrest. Well, he wasn't under arrest. There was a box to check and they didn't check the box for under arrest. But that doesn't necessarily mean he wasn't in custody. Right. I mean, when you look at and it's kind of getting to the second argument. But when you look at the Florida statute, Florida Statute 485-1014 explicitly says children aren't arrested in Florida. They're taken into custody. The entirety of 485 is a strict statutory is a strict statutory regime. And under that regime, children are taken into custody. Arrest isn't even defined. But 101-4 says that for the purposes of the custody statute that a child will be deemed to have been under arrest if they are taken into custody for the purposes of determining whether they were lawfully seized or whether evidence was appropriately gathered. And the statute explicitly answers that question. And then when you look at the arguments, I just disagree with my friend, Ms. Borland. These statutes are crystal clear. Again, 985 is the only statute in Florida that governs when you can take a child into custody. And B.M. Dubler, B.M. v. Dubler, 979 Southern 2nd, HUD v. Judd 213, Westlaw 182-1077 says that's the only statute that we can look at. And then when we go in to look at the specifics of the statute, 901, 901.03 specifically defines what's taken into custody. As soon as I take somebody and he can't move, that's in custody. 901, 985-101-B talks about when somebody can lawfully take somebody into custody. You can only lawfully take somebody into custody when they are committing a crime. Well, perhaps there's more to be discussed because it does sound like your argument is still about the probable cause. But what about now Andrew is in custody and this argument that the law enforcement was not required under Florida law to contact his parents or a guardian and this jury instruction, which whether correct or not, I think there is a logical conclusion that the jury instruction almost necessitates a finding against the sheriff. Can you speak to that? Sure. Two things is one is that the jury instruction, the only evidence in the record was that they did violate the statute. The judge found that they did and said that the jury could consider that as a piece of  There was also plenty of evidence in the record that they violated the common law duties that they owed to Andrew with regard to putting them out in a dangerous area. Once you've got somebody, you can't put them out in a dangerous area. And when you look at the specifics of the statute, both 985-101 and 985-115 explicitly require that number one, you call and you continue to call the parents until when? Until either you contact them or you put them into detention. Number two, those are the only options. And 115, the only places you can turn a child once they are in custody. So Andrew was in custody under Florida statute. The only places you can turn them over are his parents, another responsible adult and juvenile detention. That's it. And so there was no option for the sheriff to release Andrew to where to outside the fair into this dark area. That is not. Thank you, Mr. And I think we have your argument. We will certainly take both arguments under advisement and we will hear.